# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MARC NORFLEET, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 18−cv−1758−MJR |
| | ) | |
| JOHN BALDWIN, | ) | |
| SHERRY BENTON, | ) | |
| JACQUELINE LASHBROOK, | ) | |
| KAREN JAIMET, | ) | |
| LARUE LOVE, | ) | |
| MICHAEL SCOTT, | ) | |
| SAMUEL FURLOW, | ) | |
| BENNETT, | ) | |
| WANACK, | ) | |
| NORRIS, | ) | |
| LAWLESS, | ) | |
| JOHN DOES ORANGE CRUSH | ) | |
| MEMBERS, | ) | |
| GAETZ, | ) | |
| TOMAS SPILLER, | ) | |
| MARCUS MYERS, | ) | |
| CAROL MCBRIDE, | ) | |
| KENT BROOKMAN, | ) | |
| JASON HART, | ) | |
| OVERTRIP, | ) | |
| SCRO, | ) | |
| NEWMAN, | ) | |
| ILLINOIS DEPARTMENT OF | ) | |
| CORRECTIONS, | ) | |
| WEXFORD HEALTH CARE SOURCES, | ) | |
| NANCY KNOPE, | ) | |
| MALCOLM, | ) | |
| ONALSKI, | ) | |
| WAHL, | ) | |
| PITMAN, | ) | |
| HUBBER, | ) | |
| DAN VARRELL, | ) | |
| CHARLES HECK, and | ) | |
| JANE DOE 1 | ) | |
| | ) | |
| Defendants. | ) | |

1

# MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff Marc Norfleet, an inmate in Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983 for events that largely occurred at Pinckneyville Correctional Center. Plaintiff seeks equitable relief and damages. This case is now before the Court for a preliminary review of the Amended Complaint pursuant to 28 U.S.C. § 1915A.

However, review of Plaintiff's Amended Complaint reveals that he has attempted to improperly join certain claims. Thus, prior to proceeding with review of this case pursuant to § 1915A, the Court will sever certain claims into separate cases pursuant to Fed. R. Civ. P. 21 and *George v. Smith*, 507 F.3d 605 (7th Cir. 2007).

## The Amended Complaint

Plaintiff alleges that Defendants Lawless and John Doe members of the Orange Crush team destroyed Plaintiff's TV, causing $201.25 worth of damages while Newman watched. (Doc. 11, p. 7). Plaintiff does not specifically state when this happened, but alleges that he filed a case in the Illinois Court of Claims, No. 15 CC 1341 seeking reimbursement for his TV on November 7, 2014. *Id.* Plaintiff also alleges that at the time the TV was broken, Lawless and Spiller failed to either enter his cell, confirming the break, or allow him to leave his cell to take the broken TV to personal property. (Doc. 11, p. 8). As a result, when staff investigated Plaintiff's grievance 6 months later, he was unfairly disciplined for having a working TV at that time. (Doc. 11, pp. 8-9). Plaintiff alleges that Spiller instructed his counselor to rely only on Lawless's shakedown slip for proof of what happened to the TV. (Doc. 11, p. 9). When Plaintiff was sent to segregation as a result of this ticket, his personal property was never forwarded to him, causing further

deprivation. (Doc. 11, p. 10). Plaintiff alleges his remedy in the Illinois Court of Claims is inadequate because the state court ignored the facts. *Id*. Gaetz and Benton were involved in this conduct by denying Plaintiff's grievances in violation of Pinckneyville policies. (Doc. 11, p. 11).

On November 1, 2016, November 8, 2016, November 15, 2016, November 17, 2016, and February 14, 2017, Defendants Baldwin, Lashbrook, Love, Jaimet, Keane, Malcolm, Hubber, Onalski, Wahl, Pitman, and the Illinois Department of Corrections, ("IDOC"), refused to comply with Plaintiff's indefinite waist chain permit, causing bruising, cuts, and swelling to Plaintiff's wrists and fingers. (Doc. 11, p. 12). Plaintiff also alleges that Baldwin and Lashbrook have a policy, custom, or practice of permitting employees to break inmates' fingers to force compliance with the "black box" transportation restraints. (Doc. 11, p. 35).

Plaintiff alleges that IDOC, Wexford, and Boyd have a policy, custom, or practice of forcing inmates to leave their personal wheelchairs when they enter IDOC custody and accept IDOC wheelchairs instead. (Doc. 11, p. 13). On February 10, 2017, a guard noticed that the right handle grip on Plaintiff's wheelchair was loose. *Id*. Four days later on February 14, 2017, while being transported to court, the right rear back support broke off causing Plaintiff to fall straight back. (Doc. 11, pp. 13-14). The fall was made worse because Plaintiff's waist chain permit was not being honored. (Doc. 11, p. 14). When that wheelchair was replaced, it was replaced with one with a defective seat. *Id*. Plaintiff complained about the defective seat to IDOC, Wexford, Baldwin, Jaimet, Lashbrook, Love, and Varrell. *Id*. Varrell ordered a new wheelchair, but Plaintiff was transferred to Big Muddy Correctional Center before he could receive it. (Doc. 11, p. 15). Plaintiff told nurse Jane Doe at intake that he needed a new wheelchair, but she instructed him to be patient and wait for the one Varrell ordered to follow him. *Id*. Before he could receive the new

3

wheelchair, Plaintiff fell through the seat of his old one, causing ligament damage. (Doc. 11, p. 16).

Plaintiff filed another Court of Claims suit, 17 CC 782 alleging that Wanack and Norris acted to deprive Plaintiff of $197.11 and $21.17 worth of personal property, with Spiller's consent. (Doc. 11, p. 17). Scro and Overtrip deprived Plaintiff of $18.50 worth of personal property, and Lashbrook and Benton condoned their conduct. *Id*. Plaintiff alleges that his state remedies were inadequate because the Court of Claims did not apply federal case law and 1997e(a) was not taken under consideration. (Doc. 11, p. 18). Specifically, Plaintiff alleges that the Court of Claims rejected his argument that the Defendants' policies prohibited him from exhausting his grievances. (Doc. 11, pp. 18-19). Plaintiff further alleges that he has a stand-alone claim based on this conduct for violations of his First and Fourteenth Amendment freedom of speech and due process rights. (Doc. 11, p. 20-22).

Plaintiff was issued a disciplinary ticket on September 30, 2016 at Pinckneyville in retaliation for writing grievances and because of his disability. (Doc. 11, p. 24). Defendants Myers, McBride, and Heck refused to call any of Plaintiff's witnesses. (Doc. 11, p. 25).

Furlow punished Plaintiff by denying him access to the Pinckneyville ADA scheduled gym program. *Id*.

Nurse Knope wrote Plaintiff a retaliatory ticket on October 5, 2016 because of Plaintiff's disability and his complaining. (Doc. 11, p. 26). Plaintiff alleges that Baldwin and Lashbrook condoned employees' custom of not serving disciplinary tickets properly, and this ticket was not properly served. *Id*. Heck and Myers refused to accept Plaintiff's handwritten statement at the hearing, summon Plaintiff's staff witnesses, recognize that Wexford employees cannot write or initiate disciplinary reports, or accept Plaintiff's version of the facts. (Doc. 11, pp. 26-27).

4

McBride was also involved. *Id*. As a result of this ticket, Plaintiff was subjected to 1 month C grade, 1 month segregation, and 6 months contact visit restriction. (Doc. 11, p. 28).

Plaintiff alleges that Wexford has a conspiracy of allowing medical staff to initiate grievances, which violates his due process rights. (Doc. 11, p. 29).

On October 6, 2016, Scott discontinued all of Plaintiff's prescribed disability medications, specifically Neurontin, Bachofen, and Ibuprofen as punishment on behalf of Knope, Baldwin, Love, and Lashbrook. (Doc. 11, p. 31). Plaintiff was deprived of his medication for approximately a month, and wrote grievances complaining of the denial to Love, Scott, Lashbrook, and Baldwin. *Id*. Myers and McBride also knew that Plaintiff was being deprived of his medication. (Doc. 11, p. 35).

Furlow issued Plaintiff another bogus ticket on February 6, 2017 as a result of Plaintiff complaining about a Pinckneyville employee not wearing a name badge and listing Furlow as a defendant in his amended complaint in case 15-cv-1279. (Doc. 11, p. 38). Plaintiff told Defendants Baldwin, Benton, Love, Jaimet, Myers, and McBride about the falsified ticket during his disciplinary hearing and otherwise. (Doc. 11, pp. 39-40). As a result of this conspiracy to retaliate against Plaintiff for exercising his First Amendment rights, Plaintiff received 3 months' C grade, 3 months' segregation, revocation of 3 months' good time credit, and a disciplinary transfer. (Doc. 11, p. 41).

On March 12, 2017, Plaintiff was issued another disciplinary report, 12 days after being transferred into Big Muddy Correctional Center. *Id*. He was immediately transferred to Menard Correctional Center. (Doc. 11, p. 42). He alleges that he submitted a statement to Menard defendants Brookman and Hart, of which Baldwin, Benton, and Lashbrook were also made aware. *Id*. The Menard officials violated Plaintiff's due process rights by permitting the original ticket to

be served without securing Plaintiff's signature acknowledging receipt, and by failing to properly investigate the ticket. *Id.* The ticket alleged that Plaintiff refused to allow inspection of his mouth during med line and then spit water in the employee's face. (Doc. 11, p. 43). The ticket refers to Plaintiff's history of non-compliance, which Plaintiff believes that the ticket writer could not have been aware of because he had only been at Big Muddy for 10 days. (Doc. 11, pp. 43-44). As a result of this incident, Plaintiff received 1 year C grade, 1 year segregation, 1 year commissary restriction, and 6 months no contact visits. (Doc. 11, p. 46).

## Discussion

Based on the allegations of the Amended Complaint, the Court finds it convenient to divide the pro se action into 21 counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The following claims will proceed together in this litigation:

>**Count 1** – Lawless, John Doe Orange Crush Members, Newman, Spiller; Gaetz, Benton, and Baldwin deprived Plaintiff of his due process rights when they shook down his cell sometime in 2014 and destroyed his property;
>
>**Count 2** – Furlow, Spiller, Gaetz, and Benton further deprived Plaintiff of due process and/or equal protection rights by depriving him of his personal property by writing him a disciplinary report about the grievances he filed regarding the initial property damage, which caused Plaintiff to be sent to segregation without his property and/or condoned such conduct;
>
>**Count 3** – Lashbrook, IDOC, and Benton deprived Plaintiff of his access to courts by failing to respond to his grievances regarding his lost personal property that formed the subjects of his Court of Claims suits: 15 CC 1341 and 17 CC 00782;
>
>**Plaintiff's remaining claims must be severed into other lawsuits. The first lawsuit will contain the following claims**:
>
>**Count 4** – Baldwin, Lashbrook, Love, Jaimet, Malcolm, Hubber, Onalski, Wahl, Pitman, and IDOC refused to comply with Plaintiff's indefinite waist chain permit, causing bruising, cuts, and swelling to Plaintiff's wrist and fingers in November 2016 and February 2017 in violation of the Eighth Amendment, Americans with Disabilities Act ("ADA"), and Rehabilitation Act ("RA");

**Count 5** – Myers, McBride, Baldwin, and Lashbrook either instituted or were deliberately indifferent to IDOC's policy, practice, or custom of breaking inmates' fingers to force them to comply with black box restraints, pursuant to which Plaintiff's fingers were broken in November 2016 in violation of the Eighth Amendment;

**The second lawsuit will contain the following claim**:

**Count 6** – IDOC, Wexford, Baldwin, Jaimet, Lashbrook, Love, and Varrell were deliberately indifferent to Plaintiff's broken back support and defective seat of his wheelchair around February 2017 while at Pinckneyville Correctional Center in violation of the Eighth Amendment, ADA, and/or RA;

**Count 7** – IDOC and Wexford espoused a policy of refusing to allow prisoners to provide their own wheelchairs in violation of the ADA and/or RA;

**The third lawsuit will contain the following claim**:

**Count 8** – Jane Doe was deliberately indifferent to the defective seat on Plaintiff's wheelchair, which broke on March 5, 2017 while at Big Muddy Correctional Center in violation of the Eighth Amendment;

**The fourth lawsuit will contain the following claims**:

**Count 9** – Wanack, Norris, and Spiller deprived Plaintiff of his personal property in the amount of $197.11 in violation of his due process rights sometime prior to October 6, 2016;

**Count 10** – Wanack and Spiller deprived Plaintiff of $21.17 of his personal property in violation of Plaintiff's due process rights sometime prior to October 6, 2016;

**The fifth lawsuit will contain the following claim**:

**Count 11** – Scro, Overtrip, Lashbrook, and Benton deprived Plaintiff of his personal property in the amount of $18.50 violation of his due process rights sometime prior to October 6, 2016;

**The sixth lawsuit will contain the following claims**:

**Count 12** – Myers, McBride, and Heck violated Plaintiff's First Amendment and/or Fourteenth Amendment rights when they disciplined him based on a false disciplinary report written on September 30, 2016 without calling his witnesses;

**Count 13** – Myers, McBride, and Heck intentionally inflicted emotional distress upon Plaintiff in violation of Illinois state law when they disciplined him based on

7

a false disciplinary report written on September 30, 2016 without calling his witnesses;

**The seventh lawsuit will contain the following claims**:

**Count 14** – Furlow and IDOC retaliated against Plaintiff in violation of the First Amendment, Fourteenth Amendment, and/or violated Plaintiff's rights under the ADA and/or RA when Furlow denied him gym access at Pinckneyville in retaliation for being disabled and filing grievances;

**Count 15** – Furlow intentionally inflicted emotional distress upon Plaintiff in violation of Illinois state law when he banned him from the gym;

**The eighth lawsuit will contain the following claims**:

**Count 16** – Knope retaliated against Plaintiff for being disabled and complaining in violation of Plaintiff's First Amendment rights by writing him a false disciplinary ticket;

**Count 17** – Knope, Baldwin, Lashbrook, Heck, Myers, and McBride violated Plaintiff's First and/or Fourteenth Amendment rights when he was disciplined pursuant to Knope's false and improperly served disciplinary ticket, sometime around October 5, 2016;

**Count 18** – Wexford has an unconstitutional policy or custom of allowing staff to initiate grievances in violation of Plaintiff's due process rights;

**Count 19** – Knope, Love, Scott, Lashbrook, Baldwin, Wexford, and IDOC conspired to retaliate against Plaintiff when Scott withdrew his medications for a month in violation of the First Amendment, Eighth Amendment and/or RA and ADA;

**The ninth lawsuit will contain the following claim**:

**Count 20** – Furlow, Baldwin, Benton, Love, Jaimet, Myers, and McBride retaliated in violation of the First and/or Fourteenth Amendment and/or condoned the retaliation of others when Furlow wrote Plaintiff a false disciplinary report on February 6, 2017 because Plaintiff complained and included Furlow as a defendant in one of his lawsuits;

**The tenth lawsuit will contain the following claim**:

**Count 21** – Brookman, Hart, Baldwin, Benton, and Lashbrook deprived Plaintiff of his due process rights at Menard Correctional Center under the Fourteenth Amendment when they disciplined him on March 12, 2017 without sufficient evidence for spitting in an employee's face at Big Muddy Correctional Center.

8

As an initial matter, Plaintiff has mentioned Keane and Boyd in his statement of claim, but failed to include them in his case caption. This precludes the Court from considering them defendants, and accordingly, the Court has not construed any claims against them. Fed. R. Civ. P. 10; *See also Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (to be properly considered a party a defendant must be "specif[ied] in the caption"). Conversely, Plaintiff has listed Bennett in the case caption but failed to make any allegations against him or her in the body of the Amended Complaint. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption."). Accordingly, Bennett will be dismissed from this matter without prejudice for failure to state a claim against him or her. **Any other claim that is mentioned in the Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

In *George v. Smith*, the Seventh Circuit emphasized that unrelated claims against different defendants belong in separate lawsuits, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits, "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act. 507 F.3d 605, 607 (7th Cir. 2007) (citing 28 U.S.C. § 1915(b)(g)); *Wheeler v. Talbot*, 695 F. App'x 151, 152 (7th Cir. 2017) (failing to sever mis-joined claims prejudices the United States Treasury); *Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017). A prisoner who files a "buckshot complaint" that includes multiple unrelated claims against different individuals should not be allowed to avoid "risking multiple strikes for what should have

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

9

been several different lawsuits." *Turley v. Gaetz*, 625 F.3d 1005, 1011 (7th Cir. 2010). The Court has broad discretion as to whether to sever claims pursuant to Federal Rule of Civil Procedure 21 or to dismiss improperly joined Defendants. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000).

Federal Rule of Civil Procedure 20 permits joinder of all claims that "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences; [when] any question of law of fact common to all defendants will arise in the action." That means that a plaintiff cannot join separate claims against different defendants or sets of defendants in the same lawsuit, unless the plaintiff asserts a claim for relief against each defendant that arises out of the same transaction or occurrence or series thereof, and presents common questions of law or fact. *Owens*, 860 F.3d at 436; *George*, 507 F.3d at 607.

Unrelated claims may be joined pursuant to Federal Rule of Civil Procedure 18 where Rule 20 has already been satisfied. *Intercon Research Associates, Ltd. v. Dresser Ind., Inc.*, 696 F.2d 53, 57 (7th Cir. 1982). Therefore, the analysis the Court must perform in determining whether claims are properly joined is twofold: (1) first, a court must determine whether defendants are properly joined pursuant to Rule 20, (2) second, a court may then consider any unrelated claims against one or more of the group of defendants properly joined in the first step.

Plaintiff's claims span 4 years, 3 prisons, and approximately 32 defendants. Very few of Plaintiff's claims are part of the same transaction or occurrence. Plausibly, the events in Counts 1-3 constitute a chain of related transactions involving the confiscation of Plaintiff's personal property sometime in 2014. Counts 4 and 5, raising claims about the use of black box restraints are also part of the same transaction or occurrence, but clearly, the use of black box restraints in 2016 and 2017 has nothing to do with the confiscation or destruction of Plaintiff's personal

property in 2014.  Additionally, in certain spots Plaintiff has alleged claims under both state and federal law involving the same facts, and it is appropriate for those claims to proceed together.  For that reason, Counts 12 and 13 shall proceed in one suit, as shall Counts 14 and 15.  Finally, Counts 16-19, all of which relate to events that happened due to Plaintiff's interactions with Nurse Knope shall proceed together in one lawsuit.

Other than the claims described above, the remainder of Plaintiff's claims involve occurrences that happened at different times, involving different people.  Litigating those claims would require factual inquiry into desperate events.  Additionally, Plaintiff's claims raise separate and distinct legal issues.  The Amended Complaint raises many discrete transactions.  The Court finds that Plaintiff has alleged 11 separate transactions or occurrences in this lawsuit, and that there are no grounds for joining those 11 transactions together pursuant to Fed. R. Civ. P. 20 other than the grounds already described.

The Court also finds that there are limited grounds for joinder pursuant to Fed. R. Civ. P. 18, which permits joinder of unrelated claims against related parties.  Count 7, which brings claims involving discrete instances when Plaintiff's state-issued wheelchair has failed him may not be transactionally related to Plaintiff's broader complaint that he was not permitted to bring his own wheelchair into the IDOC, but the latter claim is brought against IDOC and Wexford, both of whom are Defendants in Count 6, making the joinder of Counts 6 and 7 proper under Fed. R. Civ. P. 18.  Likewise, Plaintiff's two claims for deprivations of his personal property in 2016 share common defendants in Wanack and Spiller, also making the joinder of Counts 9 and 10 proper.

The Court does not find that joinder of any other claims is proper.  While Plaintiff brings other claims with common parties, the Court finds it is appropriate to exercise its discretion pursuant to Fed. R. Civ. P. 21 and keep claims with common factual predicates together for reasons

of judicial economy. Thus, the Court will not join other claims pursuant to Fed. R. Civ. P. 18 unless all defendants in all claims are identical, as described above.

Counts 1-3 shall remain in this action. A separate order will be issued in this case to review the merits of those claims. Plaintiff shall be provided with a copy of the merits review order as soon as it is entered. No service shall be ordered on any defendant at this time, pending the § 1915A review.

## Request for a Temporary Restraining Order

Plaintiff has requested a TRO in this action enjoining the Defendants from issuing a disciplinary report with the "refusal to sign" box pre-checked and depriving him of the opportunity to request witnesses. (Doc. 11, pp. 47-48). A TRO may issue without notice:

> only if (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

FED. R. CIV. P. 65(b).

Without expressing any opinion on the merits of any of Plaintiff's other claims for relief, the Court concludes that a TRO should not issue in this matter because Plaintiff has not alleged that that he will suffer irreparable injury, loss, or damage before the defendants can be heard in opposition. Additionally, given the severance of Plaintiff's many claims into separate cases, Plaintiff's claim for injunctive relief in this case is moot, because going forward, this case only contains claims based on Plaintiff's time at Pinckneyville, where he is no longer incarcerated. *Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004). *See also Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1995). Should Plaintiff wish to renew his request for a preliminary injunction, he should file a proper motion of no more than 5000 words in a case raising claims based on his

present place of incarceration. But to the extent that the Complaint requests a TRO or injunctive relief, that request is **DENIED**.

## Disposition

**IT IS HEREBY ORDERED** that Counts 4-21, which are unrelated to Counts 1-3, are severed into separate cases as follows:  1) Counts 4 and 5 into a separate case against Baldwin, Lashbrook, Love, Jaimet, Malcolm, Hubber, Onalski, Wahl, Pitman, IDOC, Myers, McBride, and Baldwin; 2) Counts 6 and 7 into a separate case against IDOC, Wexford, Baldwin, Jaimet, Lashbrook, Love, and Varrell; 3) Count 8 into a separate case against Jane Doe (Nurse at Big Muddy); 4) Counts 9 and 10 into a separate case against Wanack, Norris, and Spiller; 5) Count 11 into a separate case against Scro, Overtrip, Lashbrook, and Benton; 6) Counts 12-13 into a separate suit against Myers, McBride, and Heck; 7) Counts 14-15 into a separate suit against Furlow and IDOC; 8) Counts 16-19 into a separate suit against Knope, Baldwin, Lashbrook, Heck, Myers, McBride, Wexford, Love, Scott, and IDOC; 9) Count 20 against Furlow, Baldwin, Benton, Love, Jaimet, Myers, and McBride; and 10) Count 21 into a separate suit against Brookman, Hart, Baldwin, Benton, and Lashbrook.

The Clerk of Court is directed to terminate Defendants Jaimet, Love, Scott, Wanack, Norris, Myers, McBride, Brookman, Hart, Overtrip, Scro, Wexford, Knope, Malcolm, Hubber, Onalski, Wahl, Pitman, Varrell, Heck, and Jane Doe #1 from this action. The Clerk of Court is further directed to add Daniel Q. Sullivan, the Warden of Big Muddy as a Defendant in the third severed lawsuit for the purposes of identifying the Jane Doe Nurse, and not as a defendant in his individual or official capacity. Plaintiff's request for a TRO/Preliminary injunction is **DENIED without prejudice**.  Bennet is **DISMISSED without prejudice** for failure to state a claim.

The claims in the severed cases shall be subject to merits review pursuant to 28 U.S.C. §1915A after a new case number and judge assignment is made.  In the new cases in this Court, the Clerk is **DIRECTED** to file the following documents:

1) This Memorandum and Order;
2) The Amended Complaint (Doc. 11);

Plaintiff **will be responsible for an additional $400.00 filing fee** in the newly severed cases should he choose to proceed.  As there will be ten new cases, this will amount to an additional $4,000 in filing fees.  Plaintiff may move to proceed IFP in the new case, if he so desires.  No service shall be ordered on the defendants in the severed case until the § 1915A review is completed.

**IT IS SO ORDERED.**

**DATED: November 20, 2018**

s/ MICHAEL J, REAGAN
**U.S. Chief District Judge**